```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION
```

| | |
|---|---|
| **PAUL BLAIR, on behalf of himself and a class,** | |
| Plaintiff, | **Case No. 06 C 398** |
| v. | **Hon. Harry D. Leinenweber** |
| **SHAVER IMPORTS, INC., doing business as CUB SHAVER MITSUBISHI, and TRI-AUTO ENTERPRISES, LLC,** | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

The Plaintiff Paul Blair (hereinafter, "Plaintiff") filed this putative class action against an automobile dealership ("Cub Shaver") and a specialist in promotional activities for dealerships ("Tri-Auto Enterprises, LLC") alleging that the Defendants wrongfully used consumer credit reports to solicit potential customers to purchase automobiles in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (the "FCRA"). Cub Shaver was insured under an insurance policy issued by Scottsdale Insurance Company ("Scottsdale") which it and the Plaintiff contend provided liability insurance coverage for the alleged FCRA violations described in the Complaint. Scottsdale denied coverage and refused to provide a defense. As a result the Plaintiff

negotiated a settlement directly with Cub Shaver and Tri-Auto. Since Cub Shaver was in the process of going out of business and Tri-Auto was thought to be near judgment proof, the proposed settlement obligated Cub Shaver to pay nothing to the proposed class and Tri-Auto would pay only the cost of providing notice to the class which was thought to be approximately $12,000. Cub Shaver was to confess judgment in the amount of $1 million, the limits of the Scottsdale policy and in return was to assign any indemnity rights it had against Scottsdale under its policy.

Plaintiff refers to this settlement as a "*Guillen*" settlement named after *Guillen ex rel. Guillen v. Potomac Ins. Co. of Illinois*, 785 N.E.2d 1 (Ill., 2003). In that case, the Illinois Supreme Court held that an assignment of an indemnity claim against an insurer was valid even though the settlement excused the insured (as is the case here) of being obligated to pay anything. The insurer had argued that since the insured owned nothing as a result of the settlement there was nothing to indemnity. However, in order to avoid the risk of collusion, the court stated that the insurer may challenge such a settlement made in its absence on the grounds of both reasonableness of the decision to settle and the reasonableness of the settlement amount.

While the case was pending on March 6, 2007, Judge Kennelly of this court held that an insurance carrier, whose policy contained similar provisions to Scottsdale's, under facts nearly identical to

those alleged by Plaintiff here, had a duty to defend FCRA claims. *Pietras v. Sentry Ins. Co.*, 2007 W.L. 715759 (N.D.Ill., 2007). On March 12, 2007, after learning of the *Pietras* decision, Scottsdale's counsel contacted Shaver's counsel to offer a defense in this case. Shaver's counsel allegedly advised Scottsdale that since Shaver was no longer in business and was prepared to confess judgment, it didn't care if Scottsdale defended it or not as it did not want to be bothered further.

One day later, on March 13, 2007, the parties to this action filed a motion for preliminary approval of a proposed class settlement. In summary the settlement provides that (1) for the designation of a class consisting of approximately 25,000 members; (2) Shaver will confess to a judgment in the amount of $1 million; (3) the class will release the judgment in return for an assignment of Shaver's indemnity rights against Scottsdale; (4) Tri-Auto will pay the cost of mailing the class notice; (5) Plaintiff's attorneys will receive as fees 25% of any amounts collected from Scottsdale; (6) the class members will receive pro rata shares of the settlement pool up to the statutory maximum of $1,000 each for wilful violations of FCRA; (7) and any money remaining after payment to the class member and payment of attorneys fees and costs will be donated to a legal services entity. Scottsdale seeks to intervene to object to the settlement. Plaintiff objects to

Scottsdale's intervention. Scottsdale contends that the settlement is collusive which the Plaintiff denies.

## II. **DISCUSSION**

Plaintiff bases its objection to intervention on dicta in the case of *Sims v. EGA Products, Inc.*, 475 F.3d 865 (7th Cir., 2007). In that case, an insurance risk manager sat on the suit papers turned over to it by the insured and failed to notify the insurer of a pending lawsuit. As a result, a default was entered against the insured. A magistrate judge recommended that plaintiff receive $31.1 million in damages. The insured filed a motion to vacate the default judgment which the magistrate judge recommended be denied. However, the district judge concluded that the recommended award was disproportionate to the wrong, vacated the default, and reopened the case. The parties settled the case via a Rule 68 offer and acceptance of judgment for the policy limits under terms that allowed the plaintiff to appeal the vacation of the default judgment. The risk manager, seeking to protect itself from the insured recouping any payments made by it in excess of the agreed judgment, sought to intervene in the litigation to oppose the settlement. The district judge denied the motion to intervene, observing that any such liability could be addressed in a follow-up action if proved necessary. The Seventh Circuit affirmed the settlement which eliminated the risk of any excess judgment against the risk manager and, in passing, stated that "[t]hird party

liability is best handled in third-party actions . . . Disputes about insurers' (or insurance agents') liability belong in separate litigation." Scottsdale points out that in the context of the *Sims* litigation these remarks were pure dicta, because by affirming the offer of judgment the risk manager was off the hook in any event. It also argues that in *Sims* the positions of the insured and the risk manager were aligned, *i.e.*, if the settlement was torpedoed by the Court of Appeals, the insured would run the risk of not being able to recover some or all of any increased money judgment from the risk manager and thus had a strong incentive to oppose vacation of the default judgment on appeal. Here the insured is defunct, judgment proof, and protected by the settlement agreement, so its interests are no longer aligned with Scottsdale.

The question is whether Scottsdale should be allowed to make its collusive arguments here, prior to the Court considering the proposed settlement for preliminary approval, or afterwards when Plaintiff attempts to collect from Scottsdale in a separate suit or by a garnishment proceeding. Presumably Scottsdale can and will make the same arguments in either forum. Plaintiff has agreed in its filings in opposition to intervention that *Guillen* controls so that Scottsdale is entitled to contest both the amount of the settlement and the reasonableness of making any settlement at all in subsequent proceedings. In other words, Scottsdale can, in either proceeding, argue that Shaver ought not have settled at all

because it had no liability and/or argue that the $1 million settlement is unreasonably high.

It seems to the Court that the distinction between the *Sims* case and this case concerning alignment and non-alignment between insured and insurer tips the balance in favor of allowing Scottsdale to intervene now prior to consideration of preliminary approval of the class settlement. There is no party in this case whose position is aligned with Scottsdale. Nor is this a case of contingent liability where it might not be necessary to decide any liability on Scottsdale's part in later litigation. Under the settlement agreement there is no contingency; Plaintiff class must seek compensation directly from Scottsdale. The fact that Shaver agreed to confess to a judgment that just happens to equal the policy limits in return for an agreement to have the judgment released without any payment ensures that there will be no discussion over the amount of the judgment absent Scottsdale's presence. It is not a claims-made settlement so that no matter how many claimants there turn out to be the total amount to be paid by Scottsdale will be $1 million if the Plaintiff is successful in obtaining the full settlement amount.

The Court is mindful that to date there has been no proof submitted of the number of potential claimants that will make up the class. The settlement agreement states that there are 25,000 class members but the Complaint only alleges that there are "more

than 200 members." The Court also notes that the case at this stage lacks an informed discussion of the basis for Plaintiff's claim that the Defendants' use of the consumer credit reports was not for a permissible purpose and therefore violated FCRA. Nor is there any discussion concerning the basis for holding that Shaver's violation was wilful. Nor has there been any discussion about the possible applicability of *Murray v. New Cingular Wireless Services, Inc.,* Slip Op. Nos. 06-2477, 06-4368 & 07-2370 (7th Cir. April 16, 2008) to Cub Shaver's liability or wilfulness.

The approval and entry of a $1 million dollar judgment prior to determining the reasonableness of the settlement will place extraordinary pressure on Scottsdale to settle with the class. This is not to say that the finding of wilfulness and damages in the amount of $1 million is not reasonable, but before approving such a settlement the Court would like to have the benefit of having the proposed settlement reviewed through the adversary process which has not occurred to date.

Finally, the Court believes that there is little prejudice to either the Defendants or Plaintiff in allowing Scottsdale to intervene and defend itself at this stage of the case. Shaver is judgment proof and out of business for reasons unrelated to this case. The settlement was reached at a very early stage of litigation without Plaintiff having to incur the expense of conducting formal discovery. Moreover, the proposed class notice

is necessarily quite complicated (4 full pages) in attempting to explain to the class members why there is no guarantee as to the sum of money that will be placed in the settlement fund for distribution. Lastly, the Court believes that judicial economy dictates that these issues be considered at this time prior to hearing on preliminary approval of the proposed settlement.

### III.  CONCLUSION

For the reasons stated herein, the Motion to Intervene of Scottsdale Insurance Company is granted pursuant to Federal Rule of Civil Procedure 24(b).

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

**DATE:** April 29, 2008